## A98A0983. ARMSTRONG STATE COLLEGE et al. v. McGLYNN.
(505 SE2d 853)

McMURRAY, Presiding Judge.

Plaintiff Brien McGlynn brought this action under the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., against defendants Armstrong State College ("ASC") and the Regents of the University System of Georgia, seeking to recover for personal injuries sustained when, as a student enrolled at ASC in a military science Mountaineering Techniques class, plaintiff injured his right ankle. Specifically, "[o]n or about July 2, 1991, Plaintiff was practicing rappelling techniques at the 30 foot tower on Defendant ASC's property with [Sergeant First Class (SFC)] Bryan K. Staggs in attendance as

senior instructor." During this instruction, plaintiff was allegedly "negligently instructed by SFC Staggs to let go of the rappelling rope and to free fall off the 30 foot tower so that the 'belayer' on the ground could apply tension to the rappel rope and bring Plaintiff to a stop before he would strike the ground. Plaintiff followed SFC Staggs' instructions and proceeded to fall directly to the ground with great force and violence, causing him to suffer a calcaneal fracture to his right foot." It was further alleged that SFC Staggs was an "agent of Defendants and [that] his negligent acts and omissions were within the scope of his duties, permission and authorization. As such, Defendants [were alleged to be] jointly and severally liable for damages suffered by Plaintiff due to the negligence of SFC Bryan K. Staggs."

Defendants' joint answer denied the allegations of negligence while admitting that "at the time of the accident . . . Plaintiff was enrolled as a student in the MIL 203 Mountaineering Techniques course offered by Armstrong State College to its students." But defendants further asserted that "SFC Bryan K. Staggs was a full-time Army officer who was being paid by the United States Army and was assigned to Armstrong State College in order to instruct [Reserve Officer Training Corps ('ROTC')] courses." After discovery, plaintiff moved for partial summary judgment over "the issue of agency," i.e., whether SFC Staggs was an "agent of the State within the meaning of the Tort Claims Act. . . ."

It is undisputed that Sergeant (Sgt.) Staggs was an active duty noncommissioned officer in the United States Army. The ROTC program at ASC was an extension of the ROTC program established at Georgia Southern University. In support of his contention that Sgt. Staggs was a member of the ASC faculty, plaintiff relied on Sgt. Staggs' description of the ROTC extension at ASC as a whole: "[PLAINTIFF'S COUNSEL]: Were you all considered faculty? [SERGEANT STAGGS]: YES, sir. Faculty and staff." In addition, plaintiff points to the following circumstances as proof of agency: the ROTC program is a "separate department [that] operates academically as a part of or with the school of arts and sciences." For academic programming, the commissioned officer in charge of the military science program at ASC reported to Joseph Adams, Dean of the School of Arts & Sciences. The officer in charge attended monthly meetings of all academic department heads, chaired by Dean Adams. Military science classes had to be approved by the faculty curriculum committee. The Army ROTC program is listed in the ASC annual catalogue, and the mountaineering course was offered to the general student body as a whole. ASC charged students a tuition fee for the course, and the students would receive a grade. The syllabus distributed to students by Sgt. Staggs was printed on ASC letterhead. ASC pro-

vides the Department of Military Science with office space, a paid secretary, and classrooms. The rappelling tower from which plaintiff fell was jointly maintained by the Department of Military Science and the plant operations personnel of ASC.

In opposition to this motion, defendants submitted the affidavit of Dean Joseph Adams, who deposed that, pursuant to the Army's specifications, "the officer in charge of the ROTC program [is made] a professor of military science . . . [but that] enlisted men and non-commissioned officers [such as Sgt. Staggs] who taught the ROTC program had no official status with [ASC]. They were not professors or instructors." Dean Adams further deposed that "Sgt. Staggs was not controlled in his day to day activities by anyone employed by [ASC, and that ASC] did not have the authority to terminate the employment of Sgt. Staggs and could not control his assignment to assist the instructor in charge of the ROTC courses. [ASC] could only prohibit his presence on campus if Sgt. Staggs had acted in a manner that would have compromised [ASC's] ability to protect the students on campus [from] sexual harassment of a student or criminal conduct on campus." Nor did ASC "have the authority to control the activities of Sgt. Staggs in teaching the mountaineering course in which the Plaintiff was injured."

In the "CROSS-ENROLLMENT AGREEMENT FOR THE ESTABLISHMENT OF ARMY [ROTC] INSTRUCTION AT [ASC]," the Army's Professor of Military Science agreed to provide "Senior Division Academic Instruction of [ROTC] on the campus of [ASC] . . . available to all qualified students[; to] provide such military personnel as may be required[; to provide] such available US Government property as may be authorized[; to] issue, at the expense of the US Government . . . textbooks for students enrolled in the ROTC program for courses taught by military instructors[; and to] provide grade reports to the [ASC] Registrar. . . ." In return, ASC promised to "adopt as part of its curriculum, a course of Senior Division [ROTC] instruction. This curriculum will be developed in coordination with the Professor of Military Science at Georgia Southern University in accordance with current Army Regulations and directives." ASC further promised to "recognize the senior military officer assigned to Georgia Southern University as Professor of Military Science and all ROTC personnel giving instruction at [ASC] as members of the faculty and Assistant Professors of Military Science." In practice, "Commissioned officers assigned to [ASC] are . . . appointed as faculty just like the officer in charge is. Noncommissioned officers [such as Sgt. Staggs] do not have the same kind of appointment, but they work to instruct students."

The trial court granted plaintiff's motion for partial summary judgment "on the issue of agency," concluding that the mountaineer-

ing course was "overseen by [ASC, such that Sgt. Staggs occupied] the position of an agent of [ASC] when he was instructing the mountaineering course." The trial court further concluded that ASC "had the right and authority to control the details of [Sgt. Staggs'] work despite the fact that it did not choose to do so." Pursuant to OCGA § 9-11-56 (h), defendants bring this direct appeal. *Held*:

"Prior to 1994, the GTCA waived sovereign immunity for 'state officers and employees while acting within the scope of their official duties or employment,' and included in the definition of officers and employees 'agent(s) of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state.' OCGA §§ 50-21-22 (7); 50-21-23 (a). . . . [A]n independent contractor is one who 'exercises an independent business and . . . is not subject to the immediate direction and control of the employer.' OCGA § 51-2-4. 'The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor . . . continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract.' [Cits.]" (Footnote omitted.) *Williams v. Dept. of Corrections*, 224 Ga. App. 571, 573 (481 SE2d 272). "The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow." (Citations and punctuation omitted.) *State of Ga. v. Goolsby*, 191 Ga. App. 161, 162 (1), 163 (381 SE2d 299) (whole court).

In the case sub judice, the cross-enrollment agreement does not give ASC the right to control the time, manner and method of the Army's performance of the contract, namely "provid[ing] Senior Division Academic Instruction of the [ROTC]," as that curriculum is developed "in accordance with current Army Regulations and directives." Dean Adams testified that ASC did not assert any control or supervision over the time, manner and method of instruction in military science. The circumstances that the purported agent provided its own tools of the trade, such as the rappelling tower, textbooks, uniforms and equipment, and employed the Army's approved training procedures authorize a conclusion that the Department of Military Science is operated by adjunct professors and instructors who are, in legal contemplation, independent contractors. *Neese v. Britt Home Furnishings*, 222 Ga. App. 292 (2), 293 (474 SE2d 44). See also *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 906 (219 SE2d 593) (applying the ten factors enumerated in the Restatement, Agency 2d,

§ 220 (2)). Independent contractors are not agents (servants) within the meaning of OCGA § 50-21-22 (7). In view of the evidentiary posture before us, the trial court erred in granting plaintiff's motion for partial summary judgment as to the issue of agency.

*Judgment reversed. Blackburn and Eldridge, JJ., concur.*

DECIDED SEPTEMBER 1, 1998 — 

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Dennis R. Dunn, Kathryn L. Allen, Senior Assistant Attorneys General*, for appellants.

*Godlove & Carellas, Robert L. Persse, Claude M. Kicklighter, Jr.*, for appellee.