## A03A1064. DEPARTMENT OF HUMAN RESOURCES et al.
## v. JOHNSON et al.
## A03A1065. COBB et al. v. JOHNSON et al.
### (592 SE2d 124)

BLACKBURN, Presiding Judge.

Following a jury verdict for the plaintiff in this action concerning the wrongful death of a minor in state custody, the Georgia Department of Human Resources ("DHR") and the Georgia Department of Juvenile Justice ("DJJ")[1] appeal the trial court's denial of their motion to dismiss and motion for directed verdict, contending they are immune from suit under the Georgia Tort Claims Act ("GTCA").[2] In a related appeal, co-defendant Broken Shackle Ranch, Inc. ("Broken Shackle") contends the jury's verdict is excessive. For the reasons set forth below, we reverse the judgment against DHR and DJJ in Case No. A03A1064 and affirm the amount of the verdict against Broken Shackle in Case No. A03A1065.

The record shows that Parthenia Johnson, acting individually and on behalf of the estate of her minor son, Bryan Jones, brought suit against DHR, DJJ, and Broken Shackle for Bryan's wrongful death. At the time of his death, Bryan, age 15, was a juvenile offender in the joint legal custody of DJJ and the Department of Family and Children Services ("DFCS"), a DHR agency. DHR and DJJ placed Bryan at Broken Shackle, a corporate facility licensed by DHR as a child caring institution. On July 24, 1995, Robert Contrera, a Broken Shackle house parent, told Bryan to sweep behind a freezer in the facility's basement. Bryan was electrocuted by faulty wiring behind the freezer and died. Subsequently, Johnson sued DHR, DJJ, and Broken Shackle for Bryan's wrongful death and pain and suffering.

In response, DHR and DJJ filed motions to dismiss and for directed verdict, contending that they were immune from suit. The trial court denied these motions. The jury found all three defendants liable for Bryan's death. The present appeals ensued.

### Case No. A03A1064

DHR and DJJ appeal both the trial court's finding that immunity had been waived and its concomitant denial of their motions to dismiss and for directed verdict, contending the trial court erred in determining that: (1) Broken Shackle (a corporation) and Contrera, though independent contractors, were "employees" of the state for

---

[1] The DJJ was formerly known as the Georgia Department of Children and Youth Services.

[2] OCGA § 50-21-20 et seq.

purposes of the GTCA pursuant to certain general statutory exceptions to the doctrine that an employer is not generally liable for the torts of an independent contractor, even though the GTCA did not authorize such exceptions;[3] and (2) Contrera (an employee of Broken Shackle, a corporation) was a foster parent for Bryan, and therefore an employee of the state under the GTCA.

As discussed more fully below, we agree that the trial court erred because: (1) our legislature has not provided in the GTCA for a waiver of sovereign immunity for acts which constitute exceptions to the doctrine that an employer is not generally liable for the torts of an independent contractor; and (2) Contrera, under the facts of this case, was not a foster parent.

We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. *Bd. of Public Safety v. Jordan.*[4] However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity. *Dept. of Transp. v. Dupree.*[5]

In general, the State of Georgia and its agencies are immune from suit, subject to explicit and unequivocal waiver by the legislature. Ga. Const. 1983, Art. I, Sec. II, Par. IX.

> The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions. Prince's 1837 Digest, p. 570; *Crowder v. Dept. of State Parks.*[6] The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which liability insurance protection was provided. Ga. Const. of 1983, Art. I, Sec. II, Par. IX. In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity "to the state and all of its departments and agencies," and this immunity is to prevail except as specifically provided therein. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

(Footnotes omitted.) *Gilbert v. Richardson.*[7]

---

[3] See OCGA § 51-2-5 (4) (employer retains sufficient control over the actions of the independent contractor to create a master-servant relationship), (5) (employer delegates a duty imposed upon it by statute to the independent contractor).

[4] *Bd. of Public Safety v. Jordan*, 252 Ga. App. 577, 583 (556 SE2d 837) (2001).

[5] *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671, 676 (570 SE2d 1) (2002).

[6] *Crowder v. Dept. of State Parks*, 228 Ga. 436, 439 (185 SE2d 908) (1971).

[7] *Gilbert v. Richardson*, 264 Ga. 744, 746 (1) (452 SE2d 476) (1994).

The 1991 amendment to the Georgia Constitution provides, in relevant part:

> (a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide. . . .
>
> (e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. *The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.*

(Emphasis supplied.) Ga. Const. 1983, Art. I, Sec. II, Par. IX.

Thus, "[c]onsidering the 1991 amendment as a whole, . . . sovereign immunity [may be] waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Gilbert*, supra at 748 (3). The 1991 amendment, therefore, effectively withdrew the waiver of sovereign immunity from its effective date, it having been approved on April 4, 1990,[8] until the effective date of the GTCA, which was approved on April 16, 1992.[9] See *Curtis v. Bd. of Regents &c. of Ga.*[10]

1. DHR and DJJ contend that the trial court erred by ruling that, pursuant to the law of respondeat superior set forth in OCGA § 51-2-5,[11] Broken Shackle and Contrera could be considered employees of the state under the GTCA, thereby triggering a waiver of immunity. As OCGA § 51-2-5 does not "specifically provide[ ] that

---

[8] Ga. L. 1990, p. 2435, § 1.

[9] Ga. L. 1992, p. 1883, § 1.

[10] *Curtis v. Bd. of Regents &c. of Ga.*, 262 Ga. 226, 227-228 (416 SE2d 510) (1992).

[11] OCGA § 51-2-5 provides:

An employer is liable for the negligence of a contractor: (1) When the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance; (2) If, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed; (3) If the wrongful act is the violation of a duty imposed by express contract upon the employer; (4) If the wrongful act is the violation of a duty imposed by statute; (5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference; or (6) If the employer ratifies the unauthorized wrong of the independent contractor.

sovereign immunity is . . . waived [for its purposes] and the extent of such waiver," Ga. Const. 1983, Art. I, Sec. II, Par. IX (e), and the GTCA makes no incorporation of OCGA § 51-2-5 by reference or otherwise, OCGA § 51-2-5 is not applicable in determining who falls within the definition of an employee for purposes of waiver under the GTCA. Therefore, we agree that the trial court erred in this matter. Ga. Const. 1983, Art. I, Sec. II, Par. IX (e).

OCGA § 50-21-23 (a) provides:

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article. The state shall have no liability for losses resulting from conduct on the part of state officers or employees which was not within the scope of their official duties or employment.

OCGA § 50-21-23 (b) elaborates: "The state waives its sovereign immunity *only to the extent and in the manner provided in this article* and only with respect to actions brought in the courts of the State of Georgia." (Emphasis supplied.)

OCGA § 50-21-22 (7), in turn, defines an employee for the purposes of the GTCA as:

> an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but *the term does not include an independent contractor doing business with the state*. The term state officer or employee also includes any natural person who is a member of a board, commission, committee, task force, or similar body established to perform specific tasks or advisory functions, with or without compensation, for the state or a state government entity, and any natural person who is a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity. An employee shall also include foster parents and foster children. *The term shall not include a corporation* whether for profit or not for profit, or any private firm, busi-

ness proprietorship, company, trust, partnership, association, or other such private entity.

(Emphasis supplied.)

Thus, the GTCA, on its face, provides that, for its purposes, neither a corporation nor an independent contractor, *without exception*, can be considered an employee of the state for purposes of triggering a waiver of immunity. Applying this plain mandate to the facts now before us, Broken Shackle is a corporation and therefore not an employee of the state for purposes of the GTCA. There is thus no waiver of sovereign immunity by the state in this regard.

Furthermore, the provisions of OCGA § 51-2-5[12] (4) (employees performing nondelegable statutory authority) and (5) (employees under complete control) cannot and do not change this result by converting Broken Shackle and Contrera into independent contractors for whom the state may become liable. As stated previously, a statute, other than the GTCA, may waive state immunity; however, it must do so *explicitly*. See *Gilbert*, supra. OCGA § 51-2-5 does *not* authorize suit against the state either explicitly or implicitly. Therefore, as "a waiver of sovereign immunity must be specific, and the extent of such waiver must be delineated in the legislative act," *Williamson v. Dept. of Human Resources*,[13] OCGA § 51-2-5 cannot be used as a means of determining that the state has waived immunity for purposes of the GTCA. See also *Ridley v. Johns*.[14]

In *Roditis v. United States*,[15] the federal circuit court reached a similar conclusion regarding the Federal Tort Claims Act ("FTCA").[16] In *Roditis*, the plaintiffs sued the United States, contending that it should be held liable and without sovereign immunity because, under general New York tort law, an independent contractor was performing a nondelegable duty on behalf of the United States at the time of the plaintiffs' alleged injury. The circuit court held:

This argument fails for two reasons. First, as the [United States] Supreme Court has explained, in adopting the independent contractor exception to liability, Congress did not

---

[12] OCGA § 51-2-5 provides:
An employer is liable for the negligence of a contractor: . . . (4) If the wrongful act is the violation of a duty imposed by statute; [or] (5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference.

[13] *Williamson v. Dept. of Human Resources*, 258 Ga. App. 113, 115 (1) (572 SE2d 678) (2002).

[14] *Ridley v. Johns*, 274 Ga. 241 (552 SE2d 853) (2001).

[15] *Roditis v. United States*, 122 F3d 108 (2nd Cir. 1997).

[16] 28 USCA § 2671.

simultaneously adopt the exceptions to that doctrine. Thus, any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors. . . . Plaintiffs' theory fails for a second reason. State law nondelegable duties imposed on landowners would result, in cases such as this, in a form of strict liability against the United States for injuries caused by its independent contractors. The FTCA, however, precludes government liability absent a negligent act, and, thus, does not extend to liability without fault.

(Citations and punctuation omitted.) Id. at 111-112.

For similar reasons, the independent contractor exceptions of OCGA § 51-2-5 are not applicable to our construction of the GTCA. Accordingly, Johnson's contentions that the state became responsible for the actions of Broken Shackle and Contrera pursuant to OCGA § 51-2-5 (4) and (5) lack merit, as incorporation of this law into the GTCA would violate both the terms of the GTCA and the 1991 amendment to the Georgia Constitution. And, because the GTCA indicates that the state's sovereign immunity is not waived for the actions of corporations or independent contractors, the trial court erred by denying the motions to dismiss and for a directed verdict filed by DHR and DJJ.

In deciding *Williams v. Dept. of Corrections*,[17] we found a waiver of sovereign immunity and held the state liable for the torts of an independent contractor pursuant to OCGA § 51-2-5. We note that the language in *Williams* is limited to the GTCA prior to the 1994 amendment.

In Ga. L. 1992, pp. 1883, 1886, which created the GTCA, OCGA § 50-21-22 (7) defined state employees and agents, specifically stating that such term "does not include an independent contractor doing business with the state." However, the GTCA had to be construed in pari materia with OCGA § 51-2-5 (4) and (5) for the then existing meaning of independent contractor and to determine when the state would be liable for an agent's torts, which created an apparent conflict between the meaning of agent and independent contractor under supervision and control of the state or performing a nondelegable statutory duty.

In Ga. L. 1994, pp. 1717, 1725, § 10, the General Assembly found it necessary to amend the GTCA to the current language of OCGA § 50-21-22 (7), which expressly excludes independent contractors from the statutory definition of state officer or employee and goes

---

[17] *Williams v. Dept. of Corrections*, 224 Ga. App. 571 (481 SE2d 272) (1997).

further to make it clear that the "term [state employee] shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity." At the same time agents of the state were dropped from the present definition, because an independent contractor could be a state agent where there was a nondelegable statutory duty or the exercise of control or right to exercise control.

Thus, the GTCA changed from the pre-1994 status, and *Williams* recognized that its opinion was limited only to those cases arising prior to 1994. *Williams*, supra at 573-577. It has no application to the facts of this case, because the 1994 amendment prevented OCGA § 51-2-5 from causing any independent contractor under any circumstances from being treated as a state employee or agent.

Our constitution and the GTCA provide that the state has sovereign immunity from tort liability unless it is *explicitly* waived by our legislature. Because the GTCA requires any statute to explicitly waive sovereign immunity, and OCGA § 51-2-5 does not so provide, it does not waive sovereign immunity.

We note, further, that we retain the concern voiced in *Williams* that the state should be responsible for its "duty to protect the safety and health of state inmates" and that it should not "be relieved [of this duty] by employing independent contractors." Id. at 575. As such, we take this opportunity to encourage our Supreme Court and our legislature to address this issue, for we have no authority to do so.

2. DHR and DJJ argue that the trial court erred in ruling that Contrera was a foster parent, and therefore a state employee for whose negligence the state has waived immunity. We agree.

The Children and Youth Act, Article 3, "Employees' Records Checks for Day-Care Centers," defines a foster parent as one who provides "care, lodging, supervision, and maintenance in a foster care home used by a child-placing agency." OCGA § 49-5-60 (11). OCGA § 49-5-60 (10) defines "foster home" as "a private home used by a child-placing agency . . . to provide 24 hour care, lodging, supervision, and maintenance for no more than six children." While these definitions by their terms apply only to Article 3, the DHR's broader regulations are consistent with them. In its Rules and Regulations for Child Caring Institutions, DHR defines "foster parent" as an adult "who provides care, lodging, supervision, and maintenance on a 24 hour basis for a [temporary period of time]." Ga. Comp. R. & Regs. r. 290-2-5-.03 (m). DHR defines "employee" as a nondirector "employed by an institution to perform . . . duties which involve personal contact between that person and any child being cared for at the institution." Ga. Comp. R. & Regs. r. 290-2-5-.13 (i). Because Bro-

ken Shackle is a child caring institution rather than a private foster home, and Contrera was employed by and provided care at Broken Shackle, rather than in his own home, Contrera was a child caring institution employee, not a foster parent.

### Case No. A03A1065

Broken Shackle argues that the verdict of $1 million for Bryan Jones's pain and suffering and $2 million for his wrongful death was so excessive, in light of the evidence, that it creates an implication of bias, prejudice, or gross mistake by the jury, and must be vacated by this Court. We disagree.

We note initially that Broken Shackle did not challenge the verdict amount at the trial level.[18] While the issue may be raised for the first time on appeal, see OCGA § 5-6-36, an excessive verdict is generally "a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony." *Moody v. Dykes*.[19] The trial court's approval of the verdict creates a presumption of correctness that cannot be disturbed on appeal absent compelling evidence. Id. While such approval may come in the form of a denial of a motion for new trial, the court's entry of judgment also constitutes approval of the verdict. *Head v. CSX Transp.*;[20] OCGA § 5-6-36 (a). Consequently, appellate courts lack the "'broad discretionary powers invested in trial courts to set aside verdicts,'" *Wheat Enterprises v. Redi-Floors*,[21] and cannot interfere "'unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.'" *Reliance Ins. Co. v. Bridges*;[22] OCGA § 13-6-4.

When there is no direct evidence of prejudice or bias, the award must be

> so flagrantly excessive or inadequate, in the light of the evidence, as to create a clear implication of bias, prejudice or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience.

*E-Z Serve Convenience Stores v. Crowell*.[23] To be set aside, the

---

[18] The trial court may order a new trial if the jury award is "so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a).

[19] *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998).

[20] *Head v. CSX Transp.*, 271 Ga. 670 (524 SE2d 215) (1999).

[21] *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 858 (3) (501 SE2d 30) (1998).

[22] *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 889-890 (16) (311 SE2d 193) (1983).

[23] *E-Z Serve Convenience Stores v. Crowell*, 244 Ga. App. 43, 47 (2) (535 SE2d 16) (2000).

amount "must appear to be exorbitant, flagrantly outrageous and extensive; in short, it must carry its death warrant on its face." *Reliance Ins. Co.*, supra at 889. Neither the jury's pain and suffering award nor its wrongful death award meets this standard.

Generally, "the sole measure of damages for pain and suffering is the enlightened conscience of fair and impartial jurors." (Punctuation omitted.) *Phillips v. Singleton.*[24] Here, Johnson presented expert testimony that Bryan was conscious for up to 15 seconds while he was being electrocuted. Under the circumstances, we cannot say that the jury erred by granting an award of $1 million for pain and suffering. See *Beam v. Kingsley*[25] ($2,584,000 award not excessive when victim survived one to two minutes after motorcycle accident).

The measure of damages for wrongful death is "the full value of the life of the decedent, as shown by the evidence." OCGA § 51-4-2 (a). This value consists of both the economic value of the deceased's normal life expectancy as determined by his expected lifetime earnings, plus "the intangible element incapable of exact proof." *Miller v. Jenkins.*[26] The value of a child's life "must be established by the enlightened conscience of an impartial jury as applied to the evidence in the case, including testimony as to such child's age, life expectancy, precocity, health, mental and physical development, family circumstances, and from the experience and knowledge of human affairs on the part of the jury." (Punctuation omitted.) *Williams v. Worsley.*[27]

Broken Shackle presents no direct evidence of prejudice, bias, or impropriety in the conduct of the trial that would compel a finding that the verdict was excessive. Instead, Broken Shackle contends that Bryan's life could not be worth $2 million, partly because Bryan "invariably" would have ended up in prison. However, that determination, as well as the value of Bryan's life as a whole, was for the jury to make, and there was evidence to support its appraisal. First, Johnson presented unrebutted expert testimony that Bryan would have been expected to earn approximately $708,000 in his lifetime, even without a high school diploma. This clearly authorized an award of at least that amount for the economic value of Bryan's life alone. Second, Bryan's mother and Gary and Kathy Cobb, directors of Broken Shackle, testified to the additional intangible value of Bryan's life by recounting his various positive attributes and their hope for his future.

The $2 million verdict for Bryan's wrongful death does not shock

---

[24] *Phillips v. Singleton*, 245 Ga. App. 788, 789 (539 SE2d 177) (2000).
[25] *Beam v. Kingsley*, 255 Ga. App. 715 (566 SE2d 437) (2002).
[26] *Miller v. Jenkins*, 201 Ga. App. 825, 826 (1) (412 SE2d 555) (1991).
[27] *Williams v. Worsley*, 235 Ga. App. 806, 808 (4) (510 SE2d 46) (1998).

the conscience, and it is not so much greater than other awards approved by this Court as to be flagrantly outrageous on its face. See, e.g., *Consolidated Freightways Corp. of Delaware v. Futrell*[28] (award of $1,000,000 for life of child); *Reliance Ins. Co.*, supra at 890 (award of $1,200,000 for life of child). See also *Lindsey v. Navistar Intl. Transp. Corp.*[29] ($5,000,000 district court award for life of 30-year-old nonworking wife and mother not clear error). We cannot say that the verdict is excessive as a matter of law, and we will not disturb it.

*Judgment reversed in Case No. A03A1064. Judgment affirmed in Case No. A03A1065. Smith, C. J., Andrews, P. J., Johnson, P. J., Ruffin, P. J., Eldridge, Barnes, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 25, 2003 —
RECONSIDERATION DENIED DECEMBER 16, 2003 —

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer L. Dalton, Assistant Attorney General, Perrie & Cole, Robert L. Bunner*, for appellants (case no. A03A1064).

*Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellants (case no. A03A1065).

*Phears & Moldovan, H. Wayne Phears, Victor L. Moldovan, Jason L. Groch*, for appellees.

---

[28] *Consolidated Freightways Corp. of Delaware v. Futrell*, 201 Ga. App. 233 (410 SE2d 751) (1991).
[29] *Lindsey v. Navistar Intl. Transp. Corp.*, 150 F3d 1307 (11th Cir. 1998).
[1] Gale raised numerous other claims, none of which is germane to this appeal.