A11A0856. GEORGIA DEPARTMENT OF CORRECTIONS
v. JAMES et al.
(718 SE2d 55)

PHIPPS, Presiding Judge.

The Georgia Department of Corrections (DOC) appeals the denial of its motion to dismiss, which asserted that sovereign immunity barred a lawsuit filed against it by Anthony Wayne James.[1] In the lawsuit, James alleged that, on May 31, 2005, as a state inmate on a work detail at an Effingham County ball park, he was required to continue pouring a concrete slab even through rainy weather; he lost his balance, and the wet concrete came into contact with skin on his legs; his legs were chemically burned, and the affected areas worsened, until he was taken to a hospital six days after the incident; by that point, his condition required him to undergo two surgeries, treatment at a burn unit, skin grafting, and physical therapy.

James sought damages for his personal injuries, naming the DOC as a defendant.[2] He charged the DOC with negligence, asserting that it had breached a nondelegable duty to protect his safety and health at the construction site and that it had breached a nondelegable duty to provide proper and expedient medical care after he sustained injuries at the construction site. As set forth more fully below, however, James failed to establish any waiver of sovereign immunity with respect to his negligence claims against the DOC. Consequently, we reverse the denial of the DOC's motion to dismiss.

At all relevant times, James was incarcerated at Effingham

---

[1] The DOC also sought dismissal on an alternative ground, but our disposition of the sovereign immunity issue renders the alternative ground moot.

[2] James also named as a defendant the company that allegedly mixed and supplied the concrete. Issues related to that defendant are not pertinent to the disposition of this appeal. See generally OCGA § 5-6-37 (parties to proceedings in lower courts are parties on appeal).

County Prison, pursuant to a contract between the DOC and Effingham County for the latter to house and care for state inmates. Supervising the slab construction was a maintenance coordinator employed by Effingham County; his job responsibilities included overseeing the construction and maintenance of county facilities, such as the ball park where James was injured. Also at the construction site, supervising James and other inmates who were assigned the same work detail, was a correctional officer employed by the Effingham County Prison.

At about 3:00 p.m. that day, after several hours of pouring concrete, James complained to the maintenance coordinator and the correctional officer that contact with the wet concrete had caused a skin reaction on his legs. The correctional officer handed James "burn cream" from a first aid kit, which James applied to the affected areas before continuing with the slab construction. At about 6:00 p.m., when the slab work was completed, the maintenance coordinator drove James back to Effingham County Prison.

The next morning, James sought treatment for his legs at the medical unit at Effingham County Prison. A licensed practical nurse who worked there and was employed by the Effingham County Board of Commissioners (and not the DOC) treated the wounds as abrasions rather than chemical burns and thus applied to the affected areas a hydrogen peroxide solution and triple antibiotic ointment, then wrapped them with gauze. Because his condition was worsening, James sought help from the medical unit on each of the next five days; on each visit, the nurse responded with the same treatment to his legs. On June 6, 2005, the nurse's supervisor returned from vacation, looked at James's legs, then immediately ordered him transported to a hospital. That same day, the DOC was first notified of James's injuries.

After these circumstances were revealed during discovery, the DOC filed a motion to dismiss, arguing that James's claims of negligence against the DOC were barred by sovereign immunity. Under the Georgia Constitution,

> sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which *specifically provides that sovereign immunity is thereby waived and the extent of such waiver*.[3]

---

[3] 1983 Ga. Const., Art. I, Sec. II, Par. IX (e) (emphasis supplied); see *Johnson v. Ga. Dept. of Human Resources*, 278 Ga. 714, 715 (1) (606 SE2d 270) (2004).

James responded to the DOC's motion by claiming that sovereign immunity was waived under the Georgia Tort Claims Act (GTCA),[4] citing thereof OCGA § 50-21-23 (a): "The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." The GTCA defines "[s]tate officer or employee," in part, as:

> . . . an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state. . . .[5]

James asserted that Effingham County's personnel — identifying specifically: (i) the county maintenance coordinator and the county correctional officer, as the individuals who had required him to continue constructing the concrete slab during inclement weather, and (ii) the county nurse, who had applied ointment and gauze to his worsening condition — were "law enforcement officers" and/or "persons acting on behalf or in service of the state in any official capacity."

Countering James's claim that sovereign immunity was waived, the DOC pointed out that there was no evidence that any DOC officer or employee had committed any of the alleged negligent acts or omissions. Further, the DOC pointed out that it was undisputed that, at all times relevant to his negligence claims, James was being housed and thus cared for at the Effingham County Prison, pursuant to Effingham County's contract with the DOC. Pointing out also that the GTCA defines "state" so as to exclude counties,[6] and additionally relying on the GTCA's exclusion of independent contractors from the definition of "[s]tate officer or employee," the DOC argued that James had failed to make the requisite showing that any state officer or employee had committed a tort for which sovereign immunity was waived by the GTCA.

The trial court ruled that James's suit was not subject to

---

[4] OCGA § 50-21-20 et seq.; see 1983 Ga. Const., Art. I, Sec. II, Par. IX (a) (providing that the General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act); *Johnson*, supra (noting that Legislature may waive sovereign immunity in a tort claims act); *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 716 (1) (545 SE2d 875) (2001) (GTCA is applicable to all state agencies and departments).

[5] OCGA § 50-21-22 (7).

[6] OCGA § 50-21-22 (5).

dismissal. Citing OCGA §§ 42-2-5,[7] 42-2-11 (c),[8] and 42-5-53 (b),[9] the court determined, "Because the Effingham County Prison and its employees are subject to the [DOC's] rules and supervision, . . . they are not 'independent contractors' but '. . . persons acting on behalf or in the service of the state in any official capacity.' " Citing *Summerlin v. Ga. Pines Community Svc. Bd.*,[10] the court noted, "Under the facts of this case, it may also be that the employees of the Effingham County Prison are 'borrowed servants' and therefore 'state employees.' "

The DOC filed this direct appeal from the denial of its motion,[11] maintaining that James's suit against it was barred by sovereign immunity.

> Sovereign immunity is not an affirmative defense[12] that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the [s]tate, and the waiver must be established by the party seeking to benefit from the waiver. Thus, [James], not [the DOC], had the burden of establishing that [the DOC] had waived sovereign immunity.[13]

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them."[14] For the following reasons, we agree with the DOC that James's suit is barred.

1. In determining that James's suit was not subject to dismissal based on sovereign immunity, the trial court misplaced reliance upon

---

[7] ("The [DOC] shall administer the state's correctional institutions and the rehabilitative programs conducted therein.")

[8] ("The [Board of Corrections] shall adopt rules governing the assignment, housing, working, feeding, clothing, treatment, discipline, rehabilitation, training, and hospitalization of all inmates coming under its custody.")

[9] ("All county correctional institutions established by the counties as provided in subsection (a) of this Code section shall be subject to supervision and control by the [DOC], and the [Board of Corrections] shall promulgate rules and regulations governing the administration and operations thereof.")

[10] 286 Ga. 593 (690 SE2d 401) (2010).

[11] See *Board of Regents v. Canas*, 295 Ga. App. 505, 506-507 (1) (672 SE2d 471) (2009) (holding that an order that denies a motion to dismiss, based on a conclusive determination that the state is not immune from suit on the basis of sovereign immunity, is directly appealable).

[12] See OCGA § 9-11-8 (c).

[13] *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (1) (434 SE2d 488) (1993), overruled on other grounds, *Hedquist v. Merrill Lynch*, 272 Ga. 209, 211 (1) (528 SE2d 508) (2000).

[14] *Ga. Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 731 (592 SE2d 124) (2003), aff'd, *Johnson*, 278 Ga. 714.

OCGA §§ 42-2-5, 42-2-11 (c), and 42-5-53.

> Nowhere in [any one of those statutory provisions] has the Legislature "specifically provide[d] that sovereign immunity [has been] waived and the extent of such waiver," and, without specific statutory language providing for (1) a waiver of sovereign immunity *and* (2) the extent of such waiver, no waiver can be shown.[15]

"[I]mplied waivers of governmental immunity should not be favored."[16] Thus, even if, pursuant to the cited statutory provisions, "the Effingham County Prison and its employees are subject to the [DOC's] rules and supervision," those statutory provisions did not authorize the trial court's ultimate conclusion that sovereign immunity was waived.[17]

2. Although James relies upon the GTCA as providing a waiver of sovereign immunity, express exceptions and limitations within the GTCA bar James's tort claims against the DOC.[18] "[T]he GTCA, on its face, provides that, for its purposes, neither a [county] nor an independent contractor, *without exception*, can be considered an employee of the state for purposes of triggering a waiver of immunity."[19] Accordingly, "[t]he General Assembly has spoken by removing from the pool of [entities] covered by the Georgia Tort Claims Act independent contractors and [counties]."[20]

(a) The General Assembly enacted OCGA § 42-5-53 to provide for any county to contract with the DOC regarding the state's inmates: "Subject to the provisions stated in this Code section, any county may purchase, rent, establish, construct, and maintain a county correctional institution for the care and detention of all inmates assigned to it by the [DOC]."[21] The statute authorizes the DOC to pay "funds . . . for each state inmate assigned to a county

---

[15] *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009) (emphasis in original) (quoting 1983 Ga. Const., Art. I, Sec. II, Par. IX (e)).

[16] *Currid*, supra at 186 (citations and punctuation omitted).

[17] See id. (Community Service Act, OCGA § 42-8-71 (d) et seq., did not create a statutory waiver of a county's sovereign immunity; Act failed both prongs of the constitutional test because its language provided for neither a specific waiver of sovereign immunity nor the extent of any waiver); *Gish v. Thomas*, 302 Ga. App. 854, 862-864 (4) (691 SE2d 900) (2010) (while OCGA § 42-5-2 imposes the duty and cost for medical care of inmates in the custody of a county upon the county, statute does not waive county's sovereign immunity because statute does not provide an express waiver, and nothing in statute can be read to imply a waiver).

[18] See OCGA § 50-21-23 (under the GTCA, "the state sovereign immunity is waived subject to all exceptions and limitations set forth" therein and "only to the extent and in the manner provided" therein).

[19] *Ga. Dept. of Human Resources*, 264 Ga. App. at 734 (1) (emphasis in original).

[20] *Johnson*, 278 Ga. at 717 (2).

[21] OCGA § 42-5-53 (a).

correctional institution to the county operating the facility."[22] The statute provides that the county may "use the money paid to it . . . for the operation and maintenance of the county correctional institution or may use the money so paid to supplant county funds or previous levels of county funding for the county correctional institution."[23] Also, the statute provides that the "[Board of Corrections] shall promulgate rules and regulations governing the administration and operation" of such county correctional institutions, and correspondingly subjects those county correctional institutions to "supervision and control by the [DOC]."[24]

And as James conceded in his brief to the trial court,[25]

[o]n May 31, 2005, at the time of his injuries, Mr. James was an inmate at the Effingham County Prison. . . . [A]t all relevant times, Mr. James was a state inmate being held by Effingham County pursuant to a contract with the GDOC. . . . And Effingham County contracted with GDOC to house and care for state inmates, such as Mr. James.

Given OCGA § 42-5-53, together with the undisputed factual record, we agree with the DOC that the county took on the role of an independent contractor doing business with the state.

The GTCA does not provide a specific or detailed definition of "independent contractor."

In the absence of such a definition, we must look diligently for the intention of the General Assembly. The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it. The meaning and effect of a statute are to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts.[26]

Generally,

[t]he true test of whether the relationship is one of employer-employee or employer-independent contractor is

---

[22] OCGA § 42-5-53 (c) (2).

[23] OCGA § 42-5-53 (c) (3).

[24] OCGA § 42-5-53 (b).

[25] James also concedes these circumstances in his brief to this court.

[26] *Summerlin*, supra at 594 (2) (citations omitted); see id. at 595 (2) (reasoning that, by electing not to include separate definition of term "employee" within GTCA, the General Assembly intended courts to apply legal definition of that term as developed under common law and existing jurisprudence).

> whether the employer, under the contract either oral or written, *assumes the right to control the time, manner and method of executing the work*, as distinguished from the right merely to require certain definite results in conformity to the contract.[27]

"The right to control the time of doing the job means the right to control the hours of work."[28] "The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow."[29]

The record before us contains no evidence that the DOC assumed the right to control the time, manner and method of operating either the work detail or the medical unit. The Effingham County maintenance coordinator had never consulted with the DOC regarding any inmate work detail; instead, he always dealt directly with Effingham County Prison personnel. Likewise, the county correctional officer at the construction site that day had never been given any instructions from the DOC on how to run the work detail. Similarly, the nurse deposed that she had never been given any information from the DOC on the treatment of patients. Indeed, James has made no effort before either the trial court or this court to cite any evidence or even to assert that the GTCA's "independent contractor" exception did not apply to his suit.[30]

Consequently, we can conclude only that Effingham County functioned as an independent contractor for which the state did not waive sovereign immunity under the GTCA.[31] And because the undisputed evidence shows that the persons James alleges commit-

---

[27] *Allrid v. Emory Univ.*, 249 Ga. 35, 39-40 (2) (285 SE2d 521) (1982) (emphasis supplied); see *Armstrong State College v. McGlynn*, 234 Ga. App. 181, 184 (505 SE2d 853) (1998); see generally *Peachtree-Cain Co. v. McBee*, 254 Ga. 91 (1) (327 SE2d 188) (1985) (explaining rationale of original common law rule of the nonliability of an employer for the torts of an independent contractor: since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it).

[28] *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990) (citation and punctuation omitted).

[29] *Armstrong State College*, supra (citation and punctuation omitted).

[30] Other than quoting the same language of the trial court's order, which language we have set forth above, the term "independent contractor" does not appear in James's appellate brief.

[31] See *Coosa Valley Technical College v. West*, 299 Ga. App. 171, 176 (2) (682 SE2d 187) (2009) (where suit against technical college and the Georgia Department of Technical and Adult Education was based on acts committed by technical college's guest lecturer, a self-employed sole proprietor, suit was barred because the guest lecturer was an independent contractor); *Dept. of Veterans Svcs. v. Robinson*, 244 Ga. App. 878, 881 (536 SE2d 617) (2000); *Armstrong State College*, supra at 184; see generally *Ga. Dept. of Human Resources*, 264 Ga.

ted negligent acts and omissions — the maintenance coordinator, the correctional officer, and the nurse — were all employees of Effingham County, these individuals did not fall within the GTCA's definition of "[s]tate officer or employee."[32]

(b) Moreover, the GTCA's statutory definition of "state" forecloses waiver of sovereign immunity in this case. In OCGA § 50-21-22 (5), the GTCA defines:

> "State" means the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, *but does not include counties*, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities.[33]

Citing OCGA § 50-21-22 (5), the Supreme Court of Georgia has held, "The waiver of sovereign immunity contained in the [GTCA] does not apply to counties."[34] Because James's lawsuit hinges on alleged negligence committed solely by a county's employees, the GTCA affords James no waiver of the state's sovereign immunity.[35]

3. Nothing in *Summerlin v. Ga. Pines Community Svc. Bd.*,[36] cited by the trial court, provides for an outcome in James's favor on the issue of waiver. That case stemmed from the death of an 18-year-old patient at Georgia Pines, a residential facility for the care and treatment of individuals with mental illness, mental retardation, and addiction.[37] The plaintiff alleged that the negligent care of certain individuals working at Georgia Pines, pursuant to the Georgia Pines Community Service Board's use of an outside staffing company, had caused the patient's death.[38] The board, which was a state entity, moved to dismiss the case based on sovereign immunity; it claimed that under the GTCA, immunity is waived only for acts of "state employees" and that the cited individuals were borrowed

---

App. 730, aff'd, *Johnson*, supra.

[32] See *Johnson*, 278 Ga. at 717 (2) (because corporations are excluded from the GTCA's statutory definition of state "employee," a corporation's employee did not fall within the statutory definition of an "employee" for whose negligence the state has waived its sovereign immunity in the GTCA).

[33] (Emphasis supplied.)

[34] *Currid*, supra at 188; see *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995) ("the waiver of sovereign immunity afforded by [the GTCA] does not extend to a county") (citing OCGA § 50-21-22 (5)).

[35] See *Currid*, supra; *Johnson*, 275 Ga. at 717 (2).

[36] Supra.

[37] Id.

[38] Id.

servants, and not employees of the state.[39] The Supreme Court of Georgia determined that the motion had been correctly denied by the trial court, explaining that " 'borrowed servants' are included within the definition of an 'employee' for purposes of the [GTCA]."[40]

*Summerlin* does not control the outcome of this case because

> for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant.[41]

James adduced no such evidence; he did not assert before the trial court that the three Effingham County employees were "borrowed servants"; nor does he assert on appeal that those Effingham County employees were borrowed servants.

4. James's argument, that his negligence action against the DOC should not be barred because the duties he alleges therein were breached are nondelegable ones, is unavailing.

The Supreme Court of Georgia rejected that argument in *Johnson v. Ga. Dept. of Human Resources*.[42] That case stemmed from the death of a 15-year-old child, who was in the joint legal custody of the Georgia Department of Human Resources (DHR) and the Georgia Department of Juvenile Justice (DJJ). The child was placed, pursuant to an agreement, in the Broken Shackle Ranch, a corporate facility licensed by DHR as a child caring institution.[43] The child, complying with the request of a Broken Shackle employee serving as a house parent to sweep behind a freezer, was electrocuted by faulty wiring behind the freezer.[44] The child's mother brought a wrongful death action against the DHR and DJJ, asserting that the ranch and the house parent were employees of the state under the GTCA, thereby triggering a waiver of immunity.[45] In affirming this court's unanimous, whole-court decision in *Dept. of Human Resources v. Johnson*,[46] the Court held that the GTCA's statutory definition of "employee," which expressly "excludes corporations and indepen-

---

[39] Id.

[40] Id. at 596.

[41] *Tim's Crane & Rigging v. Gibson*, 278 Ga. 796, 797 (604 SE2d 763) (2004) (citation and punctuation omitted).

[42] Supra.

[43] *Ga. Dept. of Human Resources*, 264 Ga. App. at 730.

[44] Id. at 730-731.

[45] *Johnson*, 278 Ga. at 714; *Ga. Dept. of Human Resources*, 264 Ga. App. at 730, 732 (1).

[46] 264 Ga. App. 730.

dent contractors doing business with the [s]tate, keeps Broken Shackle from being an employee of the [s]tate since it is a corporation."[47] Consequently, sovereign immunity with respect to Broken Shackle and its employee (the house parent) had not been waived, and suit was barred.[48]

In reaching that conclusion, the Supreme Court expressly disagreed with the premise that the state "has a nondelegable duty to protect the safety and health of state inmates that cannot be relieved by employing independent contractors."[49] Further, the Court explained:

> DHR and DJJ have meaningful statutory responsibilities for children placed in their custody, and they satisfy those responsibilities by exercising reasonable care in the selection and supervision of their independent contractors.[50] If liability without fault should be imposed on the taxpayers in circumstances of the kind presented by this record, this should be effected by the legislature, not the courts. The Georgia General Assembly has spoken by removing from the pool of State employees covered by the [GTCA] independent contractors and corporations, and by failing to include in OCGA § 51-2-5 a waiver of sovereign immunity.[51]

Likewise, in *Dept. of Veterans Svcs. v. Robinson*,[52] this court held that the Georgia Department of Veterans Services (Department) did not have a nondelegable duty to care for its veterans and that it had properly contracted with an independent contractor to run the Georgia State War Veterans' Home.[53] Therefore, in an action based on negligent acts of the contractor resulting in the death of a veteran at the Home, the trial court erred in concluding that the Department could not avail itself of the "independent contractor defense" under

---

[47] *Johnson*, 278 Ga. at 715 (1).

[48] Id. at 715-717 (1)-(3).

[49] Id. at 716 (2) (citation and punctuation omitted).

[50] James does not assert that the DOC failed to exercise reasonable care in this regard.

[51] *Johnson*, 278 Ga. at 716-717 (2) (citations and punctuation omitted); see OCGA § 51-2-5 (providing for liability for negligence of contractor in certain instances); *Dept. of Human Resources*, 264 Ga. App. at 732-733 (1) (explaining that OCGA § 51-2-5 is not applicable in determining who falls within the definition of an employee for purposes of waiver under the GTCA).

[52] Supra.

[53] Id. at 881 (noting that the Department was not statutorily prohibited from delegating the day-to-day operation of the nursing home for veterans and that the Department was authorized to expend its funds "'in any manner whatsoever for the care and support of disabled war veterans'"); accord OCGA § 42-5-53 (providing for contracts between the DOC and counties in connection with the care and detention of state inmates).

the GTCA.[54]

For the foregoing reasons, the trial court erred in concluding that "the Effingham County Prison and its employees are . . . persons acting on behalf or in the service of the state in any official capacity" such that sovereign immunity was waived by the GTCA.

*Judgment reversed. Andrews and McFadden, JJ., concur.*

DECIDED OCTOBER 21, 2011 — 

*Thurbert E. Baker, Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Bryon A. Thernes, Elizabeth A. Monyak, Assistant Attorneys General*, for appellant.

*Savage, Turner, Pinson & Karsman, Ashleigh R. Madison, Joseph Wiley, Jr.*, for appellees.

---

[54] *Dept. of Veterans Svcs.*, supra.