A95A0035. DEPARTMENT OF TRANSPORTATION v. BROWN.

(460 SE2d 812)

JOHNSON, Judge.

The Georgia Department of Transportation (DOT) decided to design and construct an extension of Georgia Highway 365, converting it to a four-lane, divided highway. Highway 365 had previously ended at State Road 17 (formerly U. S. 123), forming a "T" intersection controlled by stop signs in all three directions. The plans for the new road, which would intersect the existing State Road 17, called for installation of a traffic light signal to control traffic in both directions. The project was scheduled for completion on August 31, 1991. However, the DOT rejected the original bid for the installation of the traffic lights and the subsequent bid projected a completion date for the installation of the traffic lights of November 30, 1991. Rather than delay the opening of the intersection, the DOT erected temporary stop signs to control the traffic in both directions on State Road 17, and made the new Georgia State Route 365, temporarily, a through highway without any traffic control signs or signals.

The new intersection, as described, opened to the public on September 4, 1991. On September 28, 1991, Elsie Wheeler Colbert was driving her daughters, Shirley Hunter and Anika Colbert, on State Road 17. After entering the intersection, the car in which the women were riding was struck by a dump truck. All three women were killed on impact.

Mildred C. Brown, administratrix of the estate of Anika Colbert, brought this wrongful death action against the DOT and others. The case against the DOT was tried before a jury which returned a verdict in the amount of $1,505,000 against the DOT. The trial court reduced the jury's verdict to $1,000,000, the statutory limit of recovery under the Georgia Tort Claims Act, and entered judgment in that amount against the DOT.

1. The DOT asserts the trial court erred in denying its motions for summary judgment and a directed verdict based on the design standards exception to the Georgia Tort Claims Act (OCGA § 50-21-24 (10)). The Georgia Tort Claims Act provides a waiver of the state's sovereign immunity for torts of state officers and employees while act-

ing within the scope of their official duties unless the alleged tortious act falls within one of the exceptions set forth in OCGA § 50-21-24. OCGA § 50-21-23 (a); see *City of Thomaston v. Bridges*, 264 Ga. 4 (439 SE2d 906) (1994); *Collier v. Whitworth*, 205 Ga. App. 758, 759 (423 SE2d 440) (1992). The highway design standards exception provides: "The state shall have no liability for losses resulting from . . . (t)he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design." OCGA § 50-21-24 (10).

The trial court denied the DOT's motion for summary judgment on this issue without explanation. At trial, the DOT moved for a directed verdict on the issue, which the trial court also denied. "After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." (Citations and punctuation omitted.) *Brown Realty Assoc. v. Thomas*, 193 Ga. App. 847 (1) (389 SE2d 505) (1989). Therefore, as to the denial of DOT's motion for summary judgment, this enumeration of error cannot be considered on the merits.

However, the denial of a directed verdict motion is reviewable after entry of judgment. *Keenan v. Hill*, 190 Ga. App. 108, 110 (5) (378 SE2d 344) (1989). "In considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion; and a verdict shall be directed only where there is no conflict in the evidence as to any material issue, and the evidence introduced with all reasonable deductions therefrom, shall demand a particular verdict. . . . [Cit.]" *Strong v. Wachovia Bank of Ga.*, 215 Ga. App. 572, 573 (3) (451 SE2d 524) (1994). The highway design exception to the Georgia Tort Claims Act requires that expert testimony or other competent evidence be submitted to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared. The DOT asserts that there was no evidence that the plan or design of the road, as opened, deviated from generally accepted engineering or design standards in effect at the time the road was constructed. In support of that assertion, the DOT notes that the Manual on Uniform Traffic Control Devices (MUTCD), which has been accepted by statute (OCGA § 32-6-50) as authoritative, although not exclusively so, neither addresses nor sets a standard for transitioning traffic from an all-way stop configuration to a two-way stop intersection. Because no standard has been established, the DOT reasons, there can be no evidence of a deviation from an existing standard.

At trial, Brown's engineering expert acknowledged that no specific provision regarding such a transition exists in MUTCD, but opined that the DOT had deviated from generally accepted engineering and design standards in numerous ways. These deviations include failing to conduct additional engineering studies assessing the feasibility of opening the road with stop signs rather than the traffic light signals called for in the original plan; failing to establish a transition period from an all-way stop to a two-way stop; and failing to monitor the intersection in view of the change in plans to determine whether the modification was acceptable. Construing this testimony most favorably to Brown, as the opponent of the DOT's motion for directed verdict, we find that there was sufficient evidence regarding whether the DOT had substantially complied with generally accepted engineering or design standards in opening the road with the two-way stop configuration to submit this issue to the jury. The trial court did not err in denying the motion for directed verdict regarding the highway design exception to the sovereign immunity waiver provision of the Georgia Tort Claims Act.

2. The DOT argues that the trial court erred in denying its motions for summary judgment and a directed verdict based on immunity pursuant to the discretionary function exception to the Georgia Tort Claims Act. This exception is codified as OCGA § 50-21-24 (2), which reads: "The state shall have no liability for losses resulting from . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused." We again limit our discussion to the denial of the motion for a directed verdict, as the denial of the motion for summary judgment may not be reviewed for the reasons discussed in Division 1 of this opinion.

The Georgia Tort Claims Act defines discretionary function or duty as one "requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political or economic factors." OCGA § 50-21-22 (2). " '[T]he cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law and then to give it that construction which will effectuate the legislative intent and purpose.' . . . [Cits.]" *City of Calhoun v. North Ga. EMC*, 233 Ga. 759, 761 (1) (213 SE2d 596) (1975). See OCGA § 1-3-1. The stated intent of the Georgia Tort Claims Act, which was enacted in response to a 1991 amendment to the Georgia Constitution, is to reexamine the terms of the state's waiver of sovereign immunity, while recognizing the harsh results which occur as a result of strict application of the traditional doctrine of sovereign immunity. *Curtis v. Bd. of Regents &c.*, 262 Ga. 226, 227-228 (416 SE2d 510) (1992). Keeping the legislative intent of the Georgia Tort Claims

Act in mind, a second applicable rule of statutory construction provides that where there is, in the same statute, a specific provision as well as a general one which in its most comprehensive sense would also include matters addressed in the specific, the particular provision must control. *Schwartz v. Black*, 200 Ga. App. 735, 736 (409 SE2d 681) (1991). The statute at issue in this case includes a highway design exception which applies to "plan or design for construction of or improvement to highways, roads, streets, bridge, or other public works. . . ." Any decision made with regard to these functions should be evaluated in terms of the specific provision dealing with highway design rather than the more general statutory exception to sovereign immunity for discretionary acts.

Even if we consider the decision to open the road with two-way stop signs instead of four-way traffic light signals under the discretionary function exception rather than under the planning or design exception, we still conclude that this exception to the limited waiver of sovereign immunity is inapplicable. Although the DOT asserts that the decision to open the road on schedule, rather than when complete, was based on "social and economic" considerations, thus tracking the language of the statute, for the reasons discussed below we are not persuaded that this decision falls within the ambit of policy determinations contemplated by the discretionary functions exception to the Georgia Tort Claims Act.

While this is an issue of first impression in Georgia, the courts of numerous other states have examined the question whether the discretionary function exception to state tort claims acts is applicable to decisions affecting highways and have concluded that it is not. See, e.g., *Japan Air Lines Co. v. State*, 628 P2d 934, 938 (4) (Alaska 1981) in which the Supreme Court of Alaska held that design matters were not protected by the discretionary function exception in Alaska's Tort Claims Act because the design of an airport runway did not involve a basic governmental policy decision; *Stewart v. State*, 597 P2d 101, 106-107 (7), (8) (Wash. 1979), in which the alleged negligence by the state in the design and lighting of a bridge was not immune under the discretionary function exception; and *Andrus v. State*, 541 P2d 1117, 1120 (1-3) (Utah 1975) in which the Supreme Court of Utah held that while a decision to build a highway, and choices as to its general location are discretionary functions, the preparation of plans and specifications and the supervision of the manner in which the work is carried out are not considered discretionary so as to allow assertion of state immunity from liability. Similarly, in construing the discretionary functions exception to the Federal Tort Claims Act, a United States District Court recently held that "[A]ny discretion exercised by the government with respect to where and how to post signs warning of dangerous road conditions did not implicate 'political, social, or

economic' policy choices of the sort that Congress intended to protect from suits under the FTCA." *Cope v. Scott*, 45 F3d 445, 446 (D.C. Cir. 1995).

OCGA § 50-21-24 (2) should insulate the DOT from liability with regard to policy matters such as the underlying initial decision to extend Georgia Highway 365. The decision to open the road prior to completion with an alternative traffic control system which relied on two-way stop signs rather than on four-way traffic light signals is not a policy decision entitling the DOT to immunity under the discretionary functions exception to the Georgia Tort Claims Act. The trial court did not err in denying the DOT's motion for directed verdict on this issue.

3. The DOT is obligated by statute to plan, construct and maintain public highways. OCGA § 32-2-2 (a) (1). This obligation is intended to benefit all of the citizens of the state. Pointing to the Supreme Court's decision in *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993), the DOT asserts that it has a duty to the public at large but had no special relationship with Anika Colbert, and that, therefore, the trial court erred in denying its motion for directed verdict on this issue. This court recently declined to address the merits of this issue in the context of a motion to strike a defense. *Dept. of Transp. v. Taunton*, 217 Ga. App. 232, 234 (2) (457 SE2d 570) (1995). Now the issue is squarely before us, and we hold that the adoption of the public duty doctrine[1] in *City of Rome*, supra, does not require that a special relationship be shown between an injured individual and a governmental tortfeasor where the legislature, by statute, creates exposure of the state to potential liability for losses, as it did in OCGA § 50-21-24 (10). The express purpose of the enactment of the Georgia Tort Claims Act is to create a remedy for citizens injured by a governmental tortfeasor when in the past such a remedy was unavailable as a result of "the strict application of the traditional doctrine of sovereign immunity." OCGA § 50-21-21 (a).

Even if the *City of Rome* is interpreted broadly so as to bar statutory rights of action as well as those arising by common law, " 'where a constitutional or statute law has received a given construction by the courts of last resort . . . vested rights (may not be) impaired by a change of construction made by a subsequent decision.' [Cits.]" *Dept. of Transp. v. Kendricks*, 150 Ga. App. 9, 10 (2) (A) (256 SE2d 610) (1979). The accident giving rise to this action occurred two years prior

---

[1] The rule adopted by the Supreme Court, known as the public duty doctrine provides: "[L]iability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual." (Punctuation omitted.) *City of Rome*, supra at 27.

to the Supreme Court's decision in *City of Rome*, supra. The trial court did not err in denying the DOT's motion for directed verdict based on application of the public duty doctrine.

4. The DOT alleges the trial court erred in denying its motion in limine seeking to exclude evidence of other collisions at the intersection including seven accidents which occurred between the date it opened, September 4, 1991, and the date of this accident, September 28, 1991, as well as evidence of two additional accidents which occurred between September 28, 1991 and October 9, 1991, when the DOT began installing traffic signals. The DOT argues that the only exception to the general rule that similar accidents are inadmissible is to show that the defendant had knowledge of a certain condition. *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 677 (3) (278 SE2d 100) (1981). There are other bases for the inclusion of such evidence. Evidence of other accidents or near accidents at the same intersection at other times under the same or similar circumstances are admissible to show the existence of a dangerous condition. *Wright v. Dilbeck*, 122 Ga. App. 214, 217 (4) (176 SE2d 715) (1970).

Brown offered the evidence to show that the intersection — as opened, not as planned — was dangerous, and to show that the DOT knew or should have known of the accidents occurring at the intersection. The DOT's attempt to factually distinguish this accident from the others on the basis of the speed or direction of the cars involved is unavailing as there is no requirement that the other accidents be identical. See *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 398 (5) (339 SE2d 619) (1985). "The relevancy of other occurrences and thus the admissibility of such evidence lies within the sound discretion of the trial court, and may have probative value if the conditions of the other occurrence are substantially similar and may explain the occurrence under examination by the jury." *Reed v. Heffernan*, 171 Ga. App. 83, 85 (1) (318 SE2d 700) (1984). The trial court did not abuse its discretion in allowing the evidence of other accidents at the intersection to be heard by the jury.

5. The trial court's instruction to the jury regarding the limited purpose for which evidence of other collisions was allowed was a correct statement of the law, and was properly given. See *Mutual Benefit Health &c. v. Hickman*, 100 Ga. App. 348, 365 (4) (111 SE2d 380) (1959).

6. Finally, the trial court's charge on concurrent negligence was not error. The DOT suggests a governmental entity cannot be a joint tortfeasor because that status would constitute an impermissible gratuity in contravention of Art. III, Sec. VI, Par. VI (a) of the Georgia Constitution, which prohibits the General Assembly from granting any donation or gratuity, or to forgive any debt or obligation owing to the public. The Supreme Court, however, has held that the DOT may

be a joint tortfeasor. See *Dept. of Transp. v. Land*, 257 Ga. 657 (362 SE2d 372) (1987). Nothing in the Georgia Tort Claims Act, enacted after *Land*, supra, necessitates a different conclusion. The Act provides that "the state . . . shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances." OCGA § 50-21-23 (a). Because a jury could find an individual liable as a joint tortfeasor, the state can be liable in the same manner.

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED JULY 10, 1995 —
RECONSIDERATION DENIED JULY 27, 1995 —

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General, C. Latain Kell, Assistant Attorney General*, for appellant.

*Johnson & Ward, William C. Lanham, Clark H. McGehee*, for appellee.

*Franklin, Taulbee, Rushing & Bunce, Elizabeth F. Bunce, Craig T. Jones, Cathey & Strain, Dennis T. Cathey, J. Edward Staples, Samuel W. Oates, Jr.*, amici curiae.