A09A0761. COOSA VALLEY TECHNICAL COLLEGE et al.
v. WEST et al.
(682 SE2d 187)

MILLER, Chief Judge.

Robert Paul West, Jr., and, his wife, Paula Nicole West ("Nicole") (collectively, the "Wests") filed this personal injury action against Coosa Valley Technical College ("Coosa Valley"), the Georgia Depart-

---

ment of Technical and Adult Education (the "GDTAE"),[1] and Valada Elliott, alleging that their son sustained personal injuries caused by contact with a "nail primer" in a nail kit Nicole purchased from Elliott when Elliott appeared as a guest lecturer at Coosa Valley. The Wests' complaint included four counts; however, the Wests did not assert a claim for negligent hiring. Coosa Valley and the GDTAE (the "State Defendants") moved to dismiss the Wests' complaint, arguing, inter alia, that the State had not waived sovereign immunity for the Wests' claims. After the trial court entered an order denying the State Defendants' motion, we granted the State Defendants' application for interlocutory appeal, and the State Defendants appeal, arguing that the trial court erred by (1) reviewing their motion to dismiss under an incorrect standard; (2) imposing liability on them for acts of non-State employees; and (3) failing to apply OCGA § 50-21-24 (8) to bar any claims for alleged negligent inspection of non-State property. Finding that the trial court failed to give effect to the applicable provisions of the GTCA, we reverse.

"The trial court's ruling on the motion to dismiss [on sovereign immunity grounds] is reviewed de novo, while factual findings are sustained if there is evidence supporting them." (Footnote omitted.) *Southerland v. Ga. Dept. of Corrections*, 293 Ga. App. 56, 57 (666 SE2d 383) (2008).

The record shows that in 2003, Nicole was enrolled in the second quarter of a cosmetology program at Coosa Valley taught by Barbara Wilson and Gail Henderson (the "instructors"). Instructors at Coosa Valley often invited different vendors to appear as guest lecturers in order to expose students to different products. For the past seven to ten years, Wilson and Henderson had invited Elliott to provide a twice-yearly guest lecture on Elliott's method of applying artificial nails. Elliott regularly traveled to other vocational schools and high schools in Georgia to deliver guest lectures.

Elliott was a self-employed sole proprietor doing business under the name, "Bertoli's of Atlanta." Elliott did not charge schools for her time in delivering lectures, but she received compensation when students attending her lectures purchased her nail kits. Elliott required that students who attended her class use her nail kit because her expertise related solely to the products in her kit. Elliott packaged and sold her nail kit for $25 under the label, "Accent Universal Nail Products." Elliott testified that on some occasions,

---

[1] The GDTAE, which was renamed the Technical College System of Georgia, effective July 1, 2008, exercises leadership, management, and operational control over technical colleges. OCGA § 20-4-14 (b).

schools purchased her kits on a school credit card, and the students then reimbursed the school for the kits.

Elliott's nail kits consisted of various products, including a 1/8 ounce bottle of primer. Elliott bought her chemical products in bulk from a mail-order company and then repackaged them under her label. The small bottles of primer in Elliott's kits did not have any warnings or childproof caps. Elliott testified that she included primer in her kits because students were required to have a nail kit with primer to take the Board of Cosmetology examination.

In July 2003, Elliott appeared as a guest lecturer at Coosa Valley. The instructors testified that attendance at Elliott's lecture was optional, and students who did not attend were allowed to work in the lab instead. According to the instructors, only students who chose to attend Elliott's lecture were required to purchase Elliott's nail kit. The course syllabus advised students that "[k]its can be purchased at supply classes or obtained at Accent nail classes." Nicole attended the lecture and purchased a nail kit. The record shows that Coosa Valley charged the kit on the school credit card, and, on the same day, Nicole wrote Coosa Valley a check for $25. Nicole testified that students were required to attend Elliott's lecture and that the instructors told her that she was required to purchase Elliott's nail kit.

In October 2003, Nicole withdrew from the cosmetology program. On October 15, 2003, Nicole spread out the contents of her nail kit on her kitchen table to practice constructing a nail. After she went into another room to show her husband her work, she heard her son screaming. She and her husband rushed to her son and found that his mouth was bleeding and the bottle of primer was on the floor. When Nicole picked her son up, she felt a burning sensation and realized that "it was on him, all over his chest," and that he had sustained burns on his chest. The Wests contend that their son's injuries resulted from coming into contact with the primer.

The Wests filed their complaint against the State Defendants and Elliott on June 8, 2005, asserting claims for negligence, negligence per se, strict liability, and punitive damages. They alleged that the instructors required Nicole to purchase hazardous nail primer from Elliott, their "guest lecturer and agent." The Wests further alleged that the primer was defective in that it was neither child-resistant nor adequately labeled, in violation of federal regulations (see 16 CFR § 1700.14 (a) (29)), and that Elliott and the instructors negligently failed to warn Nicole about the product's dangers.

On April 4, 2008, the State Defendants moved to dismiss under OCGA § 9-11-12 (b) (1) and (b) (6), arguing that (1) the GTCA did not waive immunity for any claims based upon Elliott's alleged negligence and (2) the complaint failed to state a claim for strict

liability. In their response, the Wests acknowledged that they had failed to state a claim for strict liability. See OCGA § 51-1-11 (b) (1) (providing for strict liability claims against product *manufacturers*). They further conceded that they could not hold the State Defendants liable for Elliott's negligence but contended that they were also alleging that the instructors were independently negligent. The trial court denied the State Defendants' motion, reasoning that if the Wests "could prove that the cosmetology instructors failed to give the proper safety training *before* providing their students with this type of chemical, a jury could conclude that the instructors were negligent" and that a jury could also conclude that "the instructors were not justified in leaving this safety issue up to a person who was not answerable to their employer."

1. The State Defendants argue that the trial court reviewed their motion to dismiss under an incorrect standard. We agree.

In denying the State Defendants' motion, the trial court stated that "[o]n a motion to dismiss the defendant must demonstrate that Plaintiff is not entitled to relief under any state of facts which could be proved." This standard of review applies to a motion to dismiss for failure to state a claim upon which relief can be granted under OCGA § 9-11-12 (b) (6). *Stendahl v. Cobb County*, 284 Ga. 525 (1) (668 SE2d 723) (2008). To the extent the State Defendants' motion asserted that the Wests' claims were barred by the doctrine of sovereign immunity, however, it was a motion to dismiss for lack of subject matter jurisdiction pursuant to OCGA § 9-11-12 (b) (1).

> Sovereign immunity of a state agency is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case, and waiver of sovereign immunity must be established by the party seeking to benefit from that waiver; thus, *the plaintiffs had the burden of establishing waiver of sovereign immunity.*

(Citations and punctuation omitted; emphasis supplied.) *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002); see also *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 266 (2) (644 SE2d 290) (2007). As set forth below, the trial court erred in denying the State Defendants' motion to dismiss because the Wests failed to carry their burden of establishing a waiver of sovereign immunity.

2. The State Defendants claim that the trial court's order erroneously imposes liability on them for acts of non-State employees because the Wests failed to establish any independent negligent acts on the part of Wests' instructors. We note that the Wests have *not* alleged a claim of negligent hiring and never attempted to argue

or prove that theory of liability below. As such, we necessarily do not reach the question of whether the Elliotts could have proved that claim, a claim even the State concedes might have been viable. Rather, we are constrained to proceed upon the claims and issues before us on appeal. See *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 550 (340 SE2d 207) (1986). On reviewing the Wests' specific claims and the record evidence before us, we agree that the Wests have failed to establish that the instructors were independently negligent.

"Pursuant to our state constitution, sovereign immunity insulates the state and its departments and agencies from liability except to the extent that the legislature enacts a specific waiver." (Footnote omitted.) *Southerland*, supra, 293 Ga. App. at 57 (1); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). "The state's limited waiver of sovereign immunity for tort claims is set forth in the GTCA," *Southerland*, supra, 293 Ga. App. at 57 (1); OCGA §§ 50-21-20 to 50-21-37. Under OCGA § 50-21-23 (a):

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

> For purposes of the GTCA, "[s]tate officer or employee" means

> an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state.

OCGA § 50-21-22 (7). Further, "[e]xcept as otherwise provided for in this paragraph, the term ['state officer or employee'] shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity." Id.[2] Previously, the GTCA's definition of "state officer and employee" included "agents," but in

---

[2] We reject any suggestion by the dissent, in footnote 5, that Elliott might qualify as a State officer or employee because she was a "volunteer participating as a volunteer, with or

1994, the General Assembly amended the GTCA to exclude that term. See *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 735-736 (1) (592 SE2d 124) (2003), aff'd, 278 Ga. 714 (606 SE2d 270) (2004).

Relying on the definition of "state officer or employee," the State Defendants argue that they cannot be liable for Elliott's negligence "in failing to properly bottle her kits and/or warn the students about the dangers in her product." It is undisputed that Elliott, who operated through her sole proprietorship, Bertoli's of Atlanta, was an independent contractor and not an employee of Coosa Valley or the GDTAE. As such, we agree with the State Defendants that the State has not waived sovereign immunity for any claims based on Elliott's negligent acts. See *Johnson v. Ga. Dept. of Human Resources*, 278 Ga. 714, 715 (1) (606 SE2d 270) (2004) (the "GTCA's statutory definition of employee . . . excludes corporations and independent contractors doing business with the State"). Thus, the Wests' claims are subject to dismissal to the extent they are premised on the theory that Elliott was acting as the State Defendants' "agent."

In the trial court below and in this Court, the Wests have attempted to establish that the State has waived sovereign immunity for their claims by arguing that this case "involves the unlawful and negligent acts of the state instructors employed by the State Defendants. . . ." In other words, the Wests are contending that the instructors were negligent in their own right. The dispositive question is whether the Plaintiffs have succeeded in establishing that the instructors committed a negligent act or acts such that there is some basis for imposing liability on the State Defendants other than imputing Elliott's alleged negligence to them.

Pointing to the venue allegations in the Wests' complaint, which describe Elliott as a "joint tortfeasor," the dissent argues that the Wests are not required to prove that the instructors were independently negligent. See *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 183-184 (6) (460 SE2d 812) (1995) (holding that state officers and employees can be liable as joint tortfeasors). "Joint tortfeasors act negligently either in voluntary, intentional concert or separately and independently, to produce a single indivisible injury for which a

---

without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity." OCGA § 50-21-22 (7). As the dissent notes, Plaintiffs do not contend that Elliott was a volunteer. Moreover, the record does not show that she was participating in a program organized, controlled and directed by a state entity. The record shows, among other things, that Elliott was invited to be a guest lecturer on an informal basis by the instructors, who heard of her through word of mouth. According to Henderson, the instructors did not receive instructions from the GDTAE about who could be invited as guest lecturers.

rational basis does not exist for an apportionment of damages." (Citations and punctuation omitted.) *Adkins v. Knight*, 256 Ga. App. 394, 395-396 (568 SE2d 517) (2002). While the Wests consistently have proceeded on the theory that the instructors have engaged in negligence independent of Elliott's, such theory fails for the reasons set forth below.

*Failure to Warn.* The Wests argue that the instructors were independently negligent in failing to warn students about the dangerous nature of the primer, which "they, sold, or which was sold in their classroom." While the Wests contend on appeal that the instructors sold the nail kits to students, they never raised this argument below. The Wests, in fact, admitted in their complaint that Nicole purchased the primer from Elliott, alleging, for example, that Nicole "was required by the cosmetology teachers . . . to buy the hazardous chemical product from their guest lecturer and agent, Valada Elliott"; that Coosa Valley provided a "location for the sale of her [Elliott's] primer product"; and that had Nicole not been required to purchase the primer "from [the instructors'] agent, Defendant Valada Elliott," Nicole would have purchased a properly-labeled and child resistant product elsewhere.[3] Although the Wests also alleged that cosmetology students were required to pay the money for the purchase of the kits to the instructors, they admitted that such money was "for the purchase of Defendant Elliott's fingernail products." The foregoing allegations constitute binding admissions in judicio. See *Mitsubishi Motors Corp. v. Colemon*, 290 Ga. App. 86, 87 (1) (658 SE2d 843) (2008). The Wests made similar admissions in their response to the State Defendants' motion to dismiss. For example, they acknowledged that the State Defendants "as opposed to Defendant Elliott . . . were not [product] 'sellers' as defined by OCGA §§ 51-1-11 and 51-1-11.1."[4]

The Wests' admissions, described above, are consistent with Nicole's deposition testimony. She testified that the teachers purchased the requisite number of student kits on a Coosa Valley credit card, and that students reimbursed the school for the kits. This testimony establishes that Coosa Valley was nothing more than a

---

[3] We note that it is undisputed that the course syllabus stated that students could purchase nail kits elsewhere.

[4] We reject any suggestion by the dissent that the instructors became, or assumed the duties of, product sellers by facilitating the sale between Elliott and students by paying for kits with the school credit card and accepting immediate reimbursement. It is undisputed in the record that Elliott assembled and supplied the kits to students and that neither Coosa Valley nor the instructors retained any profit from the sale of kits. In light of these facts, the Wests' admissions below that Elliott, not the instructors, sold the nail kit to Nicole are understandable. We also note that there is no evidence in the record that the instructors ever had possession or control of the kit Nicole purchased.

financial middleman in the transaction between students and Elliott. It is undisputed that Coosa Valley did not receive any proceeds from the sale of the kits.

The essential elements of a negligence claim include a legal duty and breach of that duty. *Dozier Crane & Machinery, Inc. v. Gibson*, 284 Ga. App. 496, 499 (2) (644 SE2d 333) (2007). Our cases impose a duty on product manufacturers and sellers to warn consumers about dangers associated with their products. See *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997) (product seller required to warn if it "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger" created by its product) (citation and punctuation omitted); *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994) ("[T]he manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger.") (citation and punctuation omitted). The Wests (as well as the dissent) fail to cite authority for the proposition that the instructors, who neither sold nor manufactured the nail kit Nicole purchased, assumed a duty to provide warnings about a product purchased from a guest lecturer. Without establishing that the Coosa Valley instructors owed a duty to warn, the Wests cannot establish that the instructors were independently negligent.

*Failure to supervise.* The Wests argued in response to the State Defendants' motion to dismiss that the instructors were independently negligent because they failed to adequately supervise Elliott. They claimed, for example, that the instructors were negligent in failing to require Elliott to submit lesson plans, to provide input regarding Elliott's nail products and methods, and to inspect Elliott's products. The Wests' complaint, however, does not include any allegations of negligent supervision, and thus, at the time the trial court ruled on the motion to dismiss, "there existed no viable [negligent supervision claim]." (Citation and punctuation omitted.) *Jahannes v. Mitchell*, 220 Ga. App. 102, 104 (1) (469 SE2d 255) (1996). The Wests, moreover, have apparently abandoned this theory on appeal, and we conclude that their decision in this regard is justified.

As set forth in the Restatement (Second) of Torts § 414:

One who entrusts work to an independent contractor, *but who retains the control of any part of the work*, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

(Emphasis supplied.) See OCGA § 51-2-5 (5). As the comments to this section explain, however, in order for liability under this rule to arise, "the employer must have retained at least some degree of control over the manner in which the work is done." Restatement (Second) of Torts § 414 cmt. c; see also *Slater v. Canal Wood Corp.*, 178 Ga. App. 877, 880 (1) (345 SE2d 71) (1986) (citing comment c to § 414). The record here is devoid of evidence that the instructors exercised control over the manner of Elliott's work. For example, Elliott did not enter into any written agreement with Coosa Valley or the instructors, and accordingly, the instructors had no contractual rights of control over Elliott. The instructors did not sit in on Elliott's lectures but were either in their office or in the lab next door. In Henderson's words, "if Ms. Elliott is here . . . when she's talking, you know, they're her students at that time," and "she has them for that time frame." Without evidence that the Coosa Valley instructors retained control over the manner of Elliott's work, the Wests cannot demonstrate that the instructors had or breached a duty to supervise Elliott.

3. The State Defendants argue that any claims based on Nicole's instructors' negligent failure to inspect Elliott's nail kits are barred under OCGA § 50-21-24 (8). We agree.

OCGA § 50-21-24 (8), which is among the exceptions to the State's waiver of sovereign immunity under the GTCA, provides:

> The state shall have no liability for losses resulting from:
>
> . . .
>
> (8) Inspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of *any property other than property owned by the state* to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety;

(Emphasis supplied.) As discussed above, the record, including the allegations of the Wests' complaint, establishes that the nail kit Nicole purchased was owned and sold by Elliott. Accordingly, the Wests may not impose liability on the State Defendants based on the instructors' failure to inspect Elliott's nail kits. See, e.g., *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 577-578 (547 SE2d 304) (2001) (OCGA § 50-21-24 (8) exempted Department of Transportation from liability for alleged negligent inspection and approval of county's roadway construction plans).

For the reasons set forth above, we reverse the trial court's order denying the State Defendants' motion to dismiss for lack of subject matter jurisdiction.

*Judgment reversed. Andrews, P. J., Johnson, P. J., Blackburn, P. J., and Mikell, J., concur. Barnes and Ellington, JJ., dissent.*

BARNES, Judge, dissenting.

Because I am satisfied the Wests have established that the acts of the instructors at Coosa Valley were sufficient to invoke the waiver of sovereign immunity in the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., I must respectfully dissent. I agree with the majority that the trial court employed the wrong test when deciding the State Defendants' motion. I cannot agree, however, that employing the correct test must lead to reversing the trial court.

1. The State Defendants moved to dismiss the complaint because the trial court lacked subject matter jurisdiction.

> Under OCGA § 9-11-12 (b) (1), a defendant can raise a plea in abatement, which is not an adjudication on the merits, that raises the issue of the lack of subject matter jurisdiction in the trial court, but the grant of such motion only causes a dismissal of such action from the court without subject matter jurisdiction or until the condition precedent for subject matter jurisdiction has been satisfied, and the action can then be refiled. Sovereign immunity of a state agency is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case, and waiver of sovereign immunity "must be established by the party seeking to benefit from that waiver"; thus, the plaintiffs had the burden of establishing waiver of sovereign immunity.

(Citations omitted.) *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671, 676 (570 SE2d 1) (2002).

> We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity.

(Citations and footnote omitted.) *Ga. Pines Community Svc. Bd. v. Summerlin*, 296 Ga. App. 32, 34 (673 SE2d 582) (2009).

As I find sufficient evidence authorizing a waiver of sovereign immunity, even using the correct test, I would affirm the trial court.

2. The GTCA, OCGA § 50-21-23 (a), waives the sovereign immunity of the State for torts committed by State officers or employ-

ees while acting within the scope of their official duties or employment, and provides that the State "shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances," subject to the exceptions and limitations set forth in the Act.

A "[s]tate officer or employee" is defined in OCGA § 50-21-22 (7) as

> an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state. The term state officer or employee also includes any natural person who is a member of a board, commission, committee, task force, or similar body established to perform specific tasks or advisory functions, with or without compensation, for the state or a state government entity, and any natural person who is a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity. This shall include any health care provider and any volunteer when providing services pursuant to Article 8 of Chapter 8 of Title 31. An employee shall also include foster parents and foster children. Except as otherwise provided for in this paragraph, the term shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity.

The parties do not dispute that, while acting within the scope of their employment, over the last seven to ten years the employees of Coosa Valley selected Elliott to conduct her classes and sell her product twice a year as part of the regular curriculum of the cosmetology program in which Ms. West was enrolled. The Wests' complaint alleged that Elliott and Coosa Valley were joint tortfeasors, and that Coosa Valley acted as "Elliott's agent in proving a location for the sale of her 'primer' product and in providing her customers for the sale of said product," and that Elliott and the Coosa Valley teachers negligently failed to provide any warnings to Ms. West about the hazardous nature of the chemical product.

Our law does not require that the Coosa Valley employees' negligence be independent of Elliott's negligence. *Dept. of Transp. v.*

*Brown*, 218 Ga. App. 178, 183-184 (6) (460 SE2d 812) (1995) ("Because a jury could find an individual liable as a joint tortfeasor, the state can be liable in the same manner."). Therefore, contrary to the State Defendants' argument, the State employees' negligence is not required to be independent of Elliott's for the State employee's negligence to result in a waiver of sovereign immunity.[5]

I also cannot agree that the State employees had no duty to warn the students under their supervision of the nature of the materials with which they would be working. The bottle described simply as nail primer, with no list of ingredients, was methacrylic acid, a material sufficiently corrosive to cause "destruction of tissue by chemical action." It is not disputed that the teachers in charge of the course were employees of Coosa Valley, a State agency; they elected to make Elliott's presentation part of the official course of study that Ms. West was enrolled in at Coosa Valley; they bought the materials from Elliott with a State credit card and then sold these materials to West; and all of this occurred on State property.[6] In these circumstances, the instructors had a duty to know the nature of the materials that they sold to the students and which the students would be working with in the course, and to warn the students of any hazardous materials. This duty[7] is independent of any duty to inspect the product which would fall under the inspection exception to the GTCA. See OCGA § 50-21-24 (8). Therefore, I would find that the actions of the teachers, as State employees, were sufficient to invoke the waiver of sovereign immunity in the GTCA.

Our recent decision in *Georgia Pines Community Svc. Bd. v. Summerlin*, supra, 296 Ga. App. at 37-38, does not require a different result. The Wests rely upon the negligence of State employees to establish the waiver of sovereign immunity and not the negligence of Elliott or any other non-State actor. Therefore, I cannot agree that the Wests failed to establish that their claims are

---

[5] Because the parties have agreed that Elliott is not a State actor, we need not address whether she was a "volunteer" as that term is used in OCGA § 50-21-22 (7): "a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity," and thus, whether she would fall within the exception for sole proprietorships in the last sentence of the Code section, "[e]xcept as otherwise provided for in this paragraph, the term shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity."

[6] The instructors' duty to warn is illustrated by the evidence establishing that they sold the primer. Being intermediaries facilitating the sale who gained no profit does not relieve them of the duty to ensure that the students fully understood that the chemical they were purchasing was a potent acid that had to be handled with care.

[7] Although it is also obvious that the teachers may have failed in their duty to supervise Elliott's instruction, I agree with the majority that such an allegation is not included in the complaint.

within the scope of the GTCA's waiver of sovereign immunity.

Accordingly, I must respectfully dissent.

I am authorized to state that Judge Ellington joins in this dissent.

DECIDED JULY 15, 2009

*Thurbert E. Baker, Attorney General, Elizabeth A. Monyak, Assistant Attorney General*, for appellants.

*H. L. Cromartie III, Jennifer D. LeDoux*, for appellees.