**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 21, 2019**

# In the Court of Appeals of Georgia

A19A1538. BOARD OF COMMISSIONERS OF LOWNDES PH-050 COUNTY v. MAYOR AND COUNCIL OF THE CITY OF VALDOSTA, et al.

PHIPPS, Senior Appellate Judge.

In this action arising under the Service Delivery Strategy Act, OCGA § 36-70-1 et seq., the Board of Commissioners of Lowndes County (the "Board") appeals from the trial court's order granting several defendants' motion to dismiss. The trial court dismissed the Board's claims for injunctive and declaratory relief on the grounds that they were barred by sovereign immunity and dismissed the Board's claims for mandamus relief because the facts of the petition showed with certainty that the Board was not entitled to any mandamus relief. For the following reasons, we affirm.

This case involves the Service Delivery Strategy Act ("SDS Act"), OCGA § 36-70-1 et seq., and a dispute between the Board and the cities within Lowndes

County (the "Cities"). The purpose of the SDS Act was to authorize and promote the "establishment, implementation, and performance of coordinated and comprehensive planning by municipal governments and county governments[.]" OCGA § 36-70-1. The SDS Act provides a

> flexible framework within which local governments in each county can develop a service delivery system that is both efficient and responsive to citizens in their county. . . . The process provided by [the SDS Act] is intended to minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use. The local government service delivery process should result in the minimization of noncompatible municipal and county land use plans and in a simple, concise agreement describing which local governments will provide which service in specified areas within a county and how provision of such services will be funded.

OCGA § 36-70-20.

The record shows that Lowndes County and the Cities operated under a service delivery strategy agreement implemented in 2008. (The "2008 Strategy Agreement"). The 2008 Strategy Agreement provided that it "shall become effective July 1, 2008 and shall remain in force and effect *until reviewed and revised by the parties in accordance with the Act*." (Emphasis supplied.) The SDS Act contemplates that

"Each county and affected municipality shall review, and revise if necessary, the approved strategy: (1) In conjunction with updates of the comprehensive plan as required by Article 1 of this Chapter; (2) Whenever necessary to change service delivery or revenue distribution arrangements; [or] (3) Whenever necessary due to changes in revenue distribution arrangements[.]" OCGA § 36-70-28 (b) (1)-(3).

On April 12, 2016, the Chairman of the Board of Commissioners of Lowndes County sent a letter to the Mayors of the Cities of Dasher, Hahira, Lake Park, Remerton and Valdosta giving notice of a joint meeting scheduled for the "purpose of commencing deliberations on the statutorily required review, and a revision if necessary, of our service delivery strategy" The letter also stated that "OCGA § 36-70-28 requires us to review, and revise if necessary, our service delivery strategy in connection with the update of our comprehensive plan, which is also required by statute."

In June 2016, a new draft 2016 Service Delivery Strategy Agreement ("2016 Strategy Agreement") was prepared and circulated to the mayors of the Cities. The County and the Cities were instructed to notify the Department of Community Affairs ("DCA") either that the required review of the service delivery strategy had been

3

completed and that they had determined that no revisions were necessary or to file a revised service delivery strategy with DCA, by October 31, 2016.

DCA did not receive any such notification or revised Service Delivery Strategy from Lowndes County or the Cities by the deadline. Because Lowndes County and the Cities failed to provide the requisite notifications to the DCA regarding the status of their Service Delivery Strategy Agreement, DCA could not verify that the 2008 Strategy Agreement continued to comply with the Act, as is required pursuant to OCGA § 36-70-26. On November 1, 2016, DCA imposed sanctions on the County and the Cities pursuant to OCGA § 36-70-27[1] and notified the County and Cities that they would be ineligible for state-administered financial assistance, grants, loans, or permits until DCA could verify that Lowndes County and the Cities have complied with the Service Delivery Act.

---

[1] OCGA § 36-70-27 (a) (1) provides that "[n]o state administered financial assistance or grant, loan, or permit shall be issued to any local government or authority which is not included in a department verified strategy[.]" OCGA § 36-70-27 (c) then goes on to provide that "[a]ny local government or authority which is subject to the sanctions specified in subsection (a) of this Code section shall become eligible for state administered financial assistance of grants, loans, or permits on the first day of the month following verification by the department that the requirements of [OCGA §] 36-70-26 have been met." OCGA § 36-70-25.1 then provides a statutory process for mediation and dispute resolution if affected municipalities cannot reach an agreement after the imposition of sanctions provided in OCGA § 36-70-27.

4

On January 23, 2017, the Board filed suit against DCA and the Cities of Valdosta, Hahira, Dasher, Remerton and Lake Park relating to the Service Delivery Strategy Agreement. The petition requested declaratory and injunctive relief, as well as mandamus relief against DCA and the Cities. The petition argues that the 2008 Strategy Agreement remains in effect, and that the County and Cities remained eligible for state-administered financial assistance, grants, loans, and permits. DCA filed a motion to dismiss the declaratory and injunctive relief claims under sovereign immunity grounds and asserted that the mandamus claim should be dismissed for failure to state a claim. The Board then filed an amended petition for declaratory, equitable and mandamus relief, adding Camila Knowles, as the Commissioner of the Georgia Department of Community Affairs ("Knowles"), and members of the Board of the Department of Community Affairs ("DCA Board Members"). Counts One and Six of the amended petition sought declaratory and injunctive relief against Knowles and the DCA Board Members in their official and individual capacities. Count Seven of the petition seeks mandamus relief against Knowles and the DCA Board Members in their official capacities. The amended petition also removed DCA as a party.

On June 2, 2017, the trial court entered an order holding that the sanctions imposed on the County and Cities pursuant to OCGA § 36-70-27 (a) (1) to be held

5

in abeyance during the pendency of this case and ordered the DCA to reinstate the qualified local government status for the County and Cities as of May 18, 2017.

Knowles and the DCA Board Members filed a motion to dismiss the amended petition on the basis that sovereign immunity barred the claims for injunctive and declaratory relief and that the mandamus claim failed to state a claim for relief. The trial court granted the motion to dismiss.

1. The Board first argues that the trial court erred by dismissing its petition for declaratory and injunctive relief against Knowles and the DCA Board Members in their individual capacities. Defendants, however, contend that the State is the real party in interest because the County's petition is seeking relief that can be granted by the State, and that such relief is barred by sovereign immunity.

"The trial court's ruling on the motion to dismiss on sovereign immunity grounds is reviewed de novo, while factual findings are sustained if there is evidence supporting them." (Citation and punctuation omitted.) *Coosa Valley Tech. College v. West*, 299 Ga. App. 171, 172 (682 SE2d 187) (2009). Accord *James v. Ga. Dept. of Public Safety*, 337 Ga. App. 864, 865 (1) (789 SE2d 236) (2016). Further, "[t]he burden of demonstrating a waiver of sovereign immunity rests upon the party

asserting it." (Citation omitted.) *Ga. Dept. of Labor v. RTT Assocs., Inc.,* 299 Ga. 78, 81 (1) (786 SE2d 840) (2016).

In recent cases, our Supreme Court has ruled that sovereign immunity barred claims against the State for injunctive and declaratory relief. See *Lathrop v. Deal*, 301 Ga. 408, 428-429 (III) (B) (801 SE2d 867) (2017); *Olvera v. Univ. Sys. of Ga. Bd. of Regents*, 298 Ga. 425, 426 (782 SE2d 436) (2016); *Ga. Dept. of Nat. Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 602 (2) (755 SE2d 184) (2014). Our Supreme Court in *Lathrop*, supra, indicated that such suits against state officers in their individual capacities, however, may not be barred by sovereign immunity. *Lathrop*, 301 Ga. at 434-435 (III) (C). It is well-settled that a

> suit cannot be maintained against the State without its statutory consent. This general rule can not be evaded by making an action nominally against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested. Therefore, generally, where a suit is brought against an officer or agency of the State with relation to some matter in which the defendant represents the State in action and liability, and the State, while not a party to the record, is the real party against which relief is sought, so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the State, will operate to control the action of the State or subject it to liability, the suit is in effect one against the State. If, however, the sole relief sought is relief against the State officers, it

7

is maintainable. . . . A suit may be maintained against officers or agents personally, because, while claiming to act officially, they have committed or they threaten to commit wrong or injury to the person or property of plaintiff, either without right and authority or contrary to the statute under which they purport to act.

*Lathrop,* 301 Ga. at 414-415 (II) (A) (citing *Cannon v. Montgomery*, 184 Ga. 588, 591 (192 SE2d 206) (1937)).

The Board argues that Knowles and the DCA Board Members were without authority to impose sanctions against it because, it argues, the 2008 Service Delivery Strategy did not expire until all the affected municipalities within the county agreed to the revised service delivery strategy agreement pursuant to OCGA § 36-70-28.

The test for determining whether a suit is in reality one against the State though the State is not named as a party is whether "if the relief prayed [for] in the present case is granted, it will not operate to control the action of the State or subject it to liability[.]" (Citation omitted.) *Moore v. Robinson*, 206 Ga. 27, 37 (2) (55 SE2d 711) (1949). See *Holcombe v. Ga. Milk Producers Confederation*, 188 Ga. 358, 363 (3 SE2d 705) (1939) (sovereign immunity did not bar a suit for injunctive relief against board members, as individuals, because "the State is not a party to the record, [and] [n]o judgment is asked which will take any property of the State, or fasten a lien on

8

it, or interfere with the disposition of funds in its treasury, or compel the State indirectly, by controlling its officers, to affirmatively perform any contract, or pay any debt, or direct the exercise of any discretion committed to its officers").

Here, the Board's pleadings and briefs demonstrate that the DCA, and not Knowles and the DCA Board Members in their individual capacities, is the real party in interest. The Board's Petition states that "DCA has posted and is posting on its website notice that the County and the Cities are ineligible for state administered financial assistance," and that "Knowles and the members of the Board [] *are permitting the DCA to post* on its website notice that the County and the Cities are ineligible for state administered financial assistance, grants, loans, and permits, contrary to OCGA § 36-70-25.1 (f), the terms and provisions of the existing strategy agreement, and OCGA § 36-70-27." (Emphasis supplied.) Thus, it is clear that the Board is arguing that the DCA (and not Knowles and the DCA Board Members) is the entity who has posted information on its website preventing the Board from receiving state administered financial assistance.

Further, the Board seeks a declaration that (1) the 2008 Strategy Agreement remains in effect; (2) the County remains eligible for State administered financial assistance, grants, loans and permits; and (3) the sanctions provided in OCGA § 36-

9

70-27 have not been imposed according with the law. The Board also seeks an injunction ordering Knowles and the DCA Board Members in their individual capacities to direct DCA to stop listing Lowndes County as ineligible for State administered financial assistance, grants, loans, and permits.[2] This relief would control the actions of the State by requiring Knowles and the DCA Board Members to "direct the department to stop notifying state departments and agencies the County is ineligible for state administered financial assistance, grants, loans, and permits." Moreover, Knowles and the DCA Board Members have no statutory authority in their individual capacity under the SDS Act to direct the DCA to do anything. The SDS Act contains no mention of the Commissioner or DCA Board Members, and thus, the relief the Board is seeking against the individual defendants in their individual capacities is in reality relief that can only be granted by the State. See *City of Union Point v. Greene County*, 303 Ga. App. 449 (1) (a) (812 SE2d 278) (2018) (disapproved of on other grounds by *City of College Park v. Clayton County*, __ Ga. __ (2), n. 7 (830 SE2d 179) (2019)) (holding that the judicial resolution provision of the SDS Act is constitutional, and that "the only potential parties to an action under

___

[2] As noted above, the trial court's order held these sanctions in abeyance. The effect is that Lowndes County has been eligible for financial assistance, grants, loans and permits since May 18, 2017.

10

OCGA § 36-70-25.1 are counties and affected municipalities"). If granted, the requested relief would affirmatively compel the actions of a state agency, which is impermissible. See *Holcombe*, 188 Ga. at 362 (1).

Moreover, because Knowles is no longer the Commissioner and four of the DCA Board Members sued in their individual capacities are no longer serving on the Board, they have no authority in their individual capacity to direct DCA to do anything.[3]

Based upon the above, the trial court did not err in granting the defendants' motion to dismiss the claims for declaratory and injunctive relief on sovereign immunity grounds.

2. The Board next argues that the trial court erred by concluding that the Board's Petition failed to state a claim for mandamus relief against Knowles and the DCA Board Members in their individual capacities. We find no error.

A motion to dismiss for failure to state a claim "should only be granted if the allegations of the complaint, construed most favorably to the plaintiff, disclose with

---

[3] See *Bethel v. Porterfield*, 293 F.Supp.2d 1307, 1318 (III) (A) (S.D. Ga. 2003) (affirmed without opinion by 116 Fed. Appx. 246 (11th Cir. 2004)) (When a public officer is sued in his individual capacity, there will be no automatic substitution of parties when he is no longer acting as a public officer).

certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Punctuation and footnote omitted.) *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007).

The Board argues in its petition that it "seeks mandamus relief against Knowles in her official capacity and the named members of the [DCA Board] in their official capacities and the named members of the [DCA Board] in their official capacities . . . [because they] are improperly performing their official duties." The Board seeks an order from the trial court to "compel Knowles and the named members of the Board to cause and direct [DCA] to stop notifying departments and agencies of the State of Georgia that the County and the Cities are ineligible for state administered financial assistance, grants, loans, and permits."

Georgia's mandamus statute provides, in relevant part: "All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights." OCGA § 9-6-20. "Mandamus is a remedy for improper government inaction – the failure of a public official to perform a clear duty. The writ of mandamus is properly issued only if (1) no other adequate legal

12

remedy is available to effectuate the relief sought; and (2) the applicant has a clear right to such relief." (Citation and punctuation omitted.) *Love v. Fulton Co. Bd. of Tax Assessors*, 348 Ga. App. 309, 316 (2) (821 SE2d 575) (2018).

Here, we cannot say that the Board has a clear legal right to the relief sought or that there is no alternative adequate legal remedy available to the Board to effectuate the relief sought.

The Board has not pointed to any specific statute or duty in the SDS Act requiring Knowles and the DCA Board Members to act in the way the Board is seeking. Further, we cannot say that there is a clear legal right to lift the sanctions imposed against the Board pursuant to OCGA § 36-70-27. The SDS Act clearly provides that "Each county and affected municipality shall review, and revise if necessary, the approved strategy: (1) In conjunction with updates of the comprehensive plan as required by Article 1 of this Chapter[, or] (2) Whenever necessary to change service delivery or revenue distribution arrangements[.]" OCGA § 36-70-28 (b) (1) - (2). The SDS Act also provides that sanctions may be imposed against municipalities that fail to comply with these provisions of the SDS Act, and that such sanctions include the fact that "No state administered financial assistance or grant, loan, or permit shall be issued to any local government or authority which

13

is not included in a department verified strategy[.]" OCGA § 36-70-27 (a) (1). Accordingly, the SDS Act clearly contemplates that a Service Strategy Agreement will not continue unaltered despite a municipalities failure to review or revise the agreement upon request. The Board has not pointed to any "clear legal duty" to act on the part of Knowles or the DCA Board Members. In fact, the SDS Act does not contain any requirements for the DCA Board Members or the commissioner at all.

Further, we cannot say that there is no other adequate legal remedy available to the Board to effectuate the relief sought. The SDS Act itself provides a method by which parties can resolve disputes regarding the revision of a service delivery strategy. OCGA § 36-70-28 (c) provides that "In the event that a county or an affected municipality located within the county refuses to review and revise, if necessary, a strategy in accordance with paragraphs (2) and (3) of subsection (b) of this Code section, then any of the parties may use the alternative dispute resolution and appeal procedures set forth in subsection (d) of Code Section 36-70-25.1." See *Cobb County v. City of Smyrna*, 270 Ga. App. 471, 475 (2) (606 SE2d 667) (2004). See OCGA § 36-70-25.1 (f) ("In the event that the county and the affected municipalities in the county fail to reach an agreement after the imposition of sanctions provided in [OCGA §] 36-70-27, then the following process is available to the parties[,]" which

includes mandatory mediation in superior court and an evidentiary hearing in the superior court). The Board has not availed itself to this dispute resolution procedure. Further, the trial court in this case has placed the sanctions in abeyance. The effect is that Lowndes County has been eligible for financial assistance, grants, loans and permits since May 18, 2017.

Despite the Board's argument, OCGA § 36-70-25.1 (f)'s mandate that "Any service delivery agreement implemented as a result of the process set forth in this Code section shall remain in effect until revised pursuant to OCGA § 36-70-28" does not apply in this case. OCGA § 36-70-25.1 (f) applies only to service delivery agreements entered into as a result of the mediation and appeal process described in OCGA § 36-70-25.1 (a) - (c).

Because the grant of a writ of mandamus requires the petitioner to establish a clear legal right and that there is no other specific legal remedy available to the petitioner and because the Board has not made this showing, the trial court correctly denied the writ. See, e. g., *Clayton County Bd. of Commissioners v. Murphy*, 297 Ga. 763, 766 (778 SE2d 193) (2015).

*Judgment affirmed. McFadden, C. J., and McMillian, P. J., concur.*

15